JONES v. STATE.

(In Banc. June 11, 1934.)

[155 So. 430. No. 31018.]

Lester G. Fant, Jr., of Holly Springs, for appellant.

582

Oscar F. Street, of Ripley, for appellant.

W. D. Conn, Jr., Assistant Attorney-General, for the state.

Argued orally by **Lester G. Fant, Jr.**, for appellant, and by **W. D. Conn, Jr.**, for the state.

**Ethridge, J.**, delivered the opinion of the court.

The appellant, Robert Jones, was tried and convicted in the circuit court of Benton county, Mississippi, for the murder of Mark Mason, a constable, on September 4, 1933, and was sentenced to suffer the death penalty. It appears that, on complaint of one Walker, a justice of the peace gave Mark Mason, a constable, a purported search warrant for the premises of Frank Jones, the father of Robert Jones, at whose house the appellant lived, and that, although the search warrant was void, the search was made and no goods were found. Mark Mason was accompanied by another person, the son of the justice of the peace, and, after making the search and finding nothing, they arrested two young boys, brothers of the appellant, and took them from the house, continuing the search for the goods, using a flash-light, but found nothing but some tracks to which the boys' feet corresponded. At a bridge across a little stream between the Jones and the Walker residences, the deceased stated, in effect, that this was a good place for him to tie some rocks around the necks of the young Jones negroes and throw them into the creek, whereupon the appellant, who

was present, having accompanied the constable and his brothers, remarked, "No sir, they are my brothers," and the constable ordered the appellant to go back home, which the appellant did. After the appellant left the constable, Mark Mason, and the boys, a pistol shot was heard, and Mark Mason stated to McKenzie, the son of the justice of the peace, to stay with the boys and he would go and investigate. When he had been gone a short time, a shotgun report was heard, and the body of Mark Mason was found at the home of Frank Jones with his feet in the doorway, and his body on the ground, a shotgun wound having entered the body of Mark Mason just below the collar bone and ranged inward, shattering his spinal column. When the justice of the peace, McKenzie, and his son reached the home of Frank Jones, the appellant had left, and he was located some twenty-five miles distant at the home of Charlie Thomas by the sheriff and deputies. The sheriff called for them to come out, and Charlie Thomas and the appellant did so. The sheriff asked who killed Mark Mason, and the appellant replied that he did. When asked by the sheriff why he killed him, the appellant answered that he did not intend to kill him, that Mason was coming up to the door, and he intended to scare him by shooting over his head; and the sheriff said that he aimed "mighty low" to scare a man with that gun. The appellant said that, when Mark Mason told him to leave, he started walking to his home, stumbled and fell, and a small pistol in his watch pocket fell on the ground and was discharged; that he went on to his home and prepared for bed, and in a few minutes he heard a knock on the door, asked who it was, and received no answer, but some person began to break the door in, and that he reached over his bed for a shotgun on a rack, saw the door forced open and a man standing in it, but did not know whether he was a white man or a negro, and, as he reached for the hammer of the gun, it was accidentally discharged.

After his arrest, he was carried to the jail, and was

instructed by the sheriff, before making any statements, that he did not have to make any statements, but, if he did, they would be used against him. The appellant started a conversation with a deputy sheriff who told him that he did not have to talk, but, if he did, his statements would be used against him, and the appellant said that was all right, that Charlie Thomas had nothing to do with it, that he (appellant) killed Mark Mason.

There was no evidence, other than that of Robert Jones, as to what took place at the residence of Frank Jones where the appellant lived, no other person was introduced as to what happened, and it does not appear from the evidence who else was present at the killing, whether Frank Jones and his wife, or any other person, were in the house at that time. Frank Jones was introduced and testified as to what happened at the time of the search, saying that appellant came in the room with a pistol, and he told him (the appellant) to go back, as that was the law.

Robert Jones testified in his own behalf that the deceased broke open the door, and that, when he reached for the gun, it went off and killed the deceased, but that he did not intend that it should; that the deceased never stated what was his purpose; that he (appellant) had gone to bed and was barefoot, but that after the shooting he put on his shoes, threw the gun down, and ran.

When the body of the deceased was found, the void search warrant was in his pocket, but, as stated, the search under this void warrant had already been made, and nothing had been found on the premises.

There was no warrant of any kind for the arrest of the appellant, and nothing is shown in the evidence as to why the deceased broke the door open and what his purpose was. The appellant had not been shown to have committed any felony, and no misdemeanor was committed in the presence of the deceased, and, when the pistol was fired, it was not in the presence of the deceased, nor was the appellant's version of its having

been fired by his stumbling contradicted in any manner.

It is clear from the evidence that the deceased constable had no right to enter the dwelling house at the time he was killed. As stated, the search warrant was void, and the search had been made, and it did not authorize the deceased to enter the said dwelling house without permission.

The authority to arrest without a warrant is governed by section 1227, Code 1930, providing that an officer may arrest any person without a warrant for an indictable offense committed, or a breach of the peace threatened or attempted in his presence, or when a person has committed a felony, though not in his presence, or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it, or on a charge made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. Section 1228 provides that an officer, to make an arrest, after notice of his office and object, if admittance is refused, may break open a window or outer or inner door of any dwelling in which he has reason to believe the offender may be found. There is nothing in the evidence to show compliance with these sections by the deceased.

It appears, without dispute, that the appellant was in his home at night and that the deceased entered the home. There is nothing to show the contrary to the statement by the appellant in his testimony as to how the killing occurred, except the flight of the appellant from his home to the place where found.

The appellant was in his home, and no person or officer had a right to enter except in strict accordance with the law. No matter how humble, a man's home is his castle, and no one can enter without his consent, except in strict accordance with the law. An English statesman said that, though a home be poor, no officer can enter; that the wind and rain may enter, but a King could not, except in strict accordance with the law. Under con-

stitutional provisions imposed upon all the states by the national will, every person is entitled to equal protection of the law, and may not be deprived of life, liberty, or property without due process of law. All the states have adopted its equivalent in their constitutions, and every officer and juror is under the sworn duty to respect and obey these constitutional provisions. The lawmaking power of the state has provided liberally for the protection of the home and mitigated killings in defense of the home. Under section 988, Code 1930, defining what is justifiable homicide, it is provided in clause (e) as follows: ''When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, or upon or in any dwelling-house in which such person shall be.'' By section 991, Code 1930, it is provided that: ''The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any crime or misdemeanor not amounting to felony, or in the attempt to commit any crime or misdemeanor, where such killing would be murder at common law, shall be manslaughter.'' Section 995 reads as follows: ''Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter.''

At the close of the testimony, the appellant requested the court to charge the jury that he could not be convicted under the evidence of a crime higher than manslaughter, which instruction the court refused, and we think such refusal was erroneous.

It was held in Williams v. State, 122 Miss. 151, 84 So. 8, that killing in resisting an unlawful act constituted manslaughter and in Williams v. State, 127 Miss. 851, 90 So. 705, it was held that, where it appears from the evidence, in a trial for murder, that the defendant killed the deceased in resisting an attempt by the deceased to

commit a crime, it is error to refuse an instruction limiting the verdict to manslaughter.

In Ayers v. State, 60 Miss. 709, it was held that the owner of property, on his own premises, has the right, by force, to evict a trespasser, or restrain the trespasser from injuring his person or property, and the owner is justified in arming himself with any weapon and using it to the extent of slaying the trespasser, if necessary, in the progress of the difficulty, to protect his life or person from a felonious assault.

In Cryer v. State, 71 Miss. 467, 14 So. 261, 42 Am. St. Rep. 473, it was held that, where one of a sheriff's posse is killed in an attempt to arrest two persons, one of them alleged to have committed murder, and it appears there was no warrant for the arrest, and the evidence leaves it doubtful whether any felony was committed by any one, or even charged on reasonable grounds, and the supposed felony was not committed in the officer's presence, an instruction that, if the accused shot the deceased to prevent being arrested, he was guilty as charged, is erroneous.

In Wilkinson v. State, 143 Miss. 324, 108 So. 711, 46 A. L. R. 895, it was held that the right to resist unlawful arrest is a phase of self-defense.

In Maury v. State, 68 Miss. 605, 9 So. 445, 24 Am. St. Rep. 291, it was held that, if the appellant believed that twelve armed men were advancing upon him, fired on them and killed two, the facts did not constitute murder.

Taking all the evidence for the state at its strongest, and giving every just inference which may be drawn therefrom, we are unable to uphold the conviction in this case.

In view of the conclusion we have reached upon the merits of the case at bar, we deem it unnecessary to discuss the questions raised on the motion for a change of venue.

The judgment of the court below will be reversed and the cause remanded for a new trial.

Reversed and remanded.

**Smith, C. J.,** delivered a dissenting opinion.

In order that my views may be clearly understood, it will be necessary for me to restate the case and include some facts therein that I deem material, not set forth in the main opinion. I will not pause to do this, but will simply say that I am of the opinion that the requested instruction limiting the conviction of the appellant to manslaughter was properly refused. The evidence justified a conviction of either murder or manslaughter, depending on the presence vel non of malice on the part of the appellant when he fired the fatal shot. This was a question of fact for the jury.