### MAGEE *v.* STATE.

(In Banc. May 14, 1945. Suggestion of Error Overruled Sept. 11, 1945.)

[22 So. (2d) 245. No. 35870.]

Leon L. Shelton and H. C. Stringer, both of Jackson, for appellant.

M. Ney Williams, of Raymond, for appellant.

Greek L. Rice, Attorney General, by R. O. Arrington, Assistant Attorney General, and Ross R. Barnett, of Jackson, for appellee.

Argued orally by **H. C. Stringer**, for appellant, and by **Ross R. Barnett** and **R. O. Arrington**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

Upon being convicted of the charge of having murdered Ernest Conn, who was shot and killed at his cafe in the Town of Utica, the appellant, Sandy Magee, a negro, was sentenced to suffer the death penalty on account thereof, and he has prosecuted this appeal.

Among other grounds relied upon for a reversal of the case, it is assigned as error that the state was permitted to prove, over the objection of the accused, the fact that he had two years previously shot another man in the head with a pistol, and also that he had paid the expenses (for doctor and hospital bills) incurred by his victim in connection therewith; that such proof of the details of this former difficulty in which the accused was apparently at fault (although he had never been prosecuted therefor) was highly prejudicial to his rights, not only on the issue of his guilt or innocence of the crime charged in the instant case, but also on the question of what degree of punishment should be fixed by the jury.

It appears that the testimony thus complained of was elicited upon the cross-examination of one of the several witnesses introduced by the defendant to prove his general reputation of good character for peace or violence. The evidence given by other witnesses on the main issue was in sharp conflict as to whether Mr. Conn was shot after the accused had wrenched his pistol from his hand and was in possession of both weapons, or was shot by the accused in self-defense, while the deceased still held his own pistol in his hand.

In this situation, the prosecution was allowed to ask a character witness if it was not a fact that during the time the defendant "lived near you, on your father's place, he shot another negro by the name of Tom Thomas," and "if it was not general information throughout the community that this defendant shot this colored boy, Tom Thomas, a couple of years ago"; also, if it was not a fact that the defendant on that occasion borrowed money from the father of the witness "to go and get this matter settled up when he shot this boy, Tom Thomas"; and whether it was not a fact that he shot Tom Thomas in the head with a pistol at the time inquired about. All of these questions were answered by the witness in the affirmative.

While it is permissible on cross-examination, when testing the good faith and credibility of a character witness, to ask if he has not heard rumors or reports in the community of particular acts of violence imputed to the defendant which are inconsistent with the testimony then being given by the witness regarding the good reputation of the accused as to the particular trait of character inquired about, as was sought to be done in the second interrogatory above quoted, and to ask whether or not he had heard of specific charges of misconduct made against the defendant in the community (Smith v. State, 112 Miss. 802, 73 So. 793), nevertheless, it is error to go into the details of the specific incidents to which the attention of the witness is directed and on which the rumors or complaints may have been based, with a view of establishing the details of the alleged misconduct as a fact instead of as a matter of reputation.

It is the general reputation of the accused that constitutes the subject matter of the inquiry, and not what the witness may know personally about his specific deeds and misdeeds. The purpose of the cross-examination is to enable the jury to properly evaluate the testimony of the character witness by ascertaining his good faith, information and accuracy, and not to produce substantive

evidence of the defendant's character. Where it is manifest that the primary object of the cross-examination is not to discredit or weaken the testimony of the character witness, but to prejudice the jury against the defendant by proving as a fact that he had on a former occasion actually committed a specific crime, and it is apparent that the inquiry must have been so received by the jury to his prejudice, then the evidence thus adduced is improper. Com. v. Jones, 280 Pa. 368, 124 A. 486; Com. v. Thomas, 282 Pa. 20, 127 A. 427. In the instant case, the character witness was also asked on cross-examination if it was not a fact that while the defendant was working on the place of the father of the witness he told him to do some work and the defendant told his father "he was not going to do it." The Court sustained an objection to this inquiry "as to the details of it." But, jurors don't trouble ther minds about any supposed details of a negro telling a white man, on whose place he is employed, that he is not going to do what he is told. While it is true that the injection of this highly prejudicial incident is not specfically complained of on appeal, we mention it as being significant as to the purpose of the inquiry. Most assuredly it had no bearing on the credibility of the witness who was being cross-examined.

The cross-examination should have gone no further than to test the good faith and credibility of the witness, and to show that as a matter of general information in the community the general *reputation* of the accused for peace or violence, was to the knowledge or information of the witness, not as good as the latter would have the jury believe.

Where the defendant introduces witnesses to prove his character as to the trait charged agains him in the indictment, it was held in the case of Smith v. State, supra, that the state may, on cross-examination of such witnesses, ask them if they had *heard* charges of that kind against him before. This is permissible because it bears directly on the value of the testimony given by them in

chief. In that case, the Court merely upheld the right of the prosecution to cross-examine the witnesses ''in the matter which it did in this case.'' [112 Miss. 802, 73 So. 794.] And, the answers made did not establish as a fact any previous misconduct of the defendant nor were the witnesses asked about the details of any specific wrongful acts. As stated in the annotation under the case of State v. Shull, 131 Or. 224, 282 P. 237, 71 A. L. R. 1510, our Court in the Smith case merely applied the majority rule, but did not enter into any discussion thereof, or define the rule in the abstract, or cite any authority for its ruling.

But, later in the case of Herring v. State, 122 Miss. 647, 84 So. 699, 704, where a character witness as to the good reputation of the accused for peace or violence was asked on cross-examination if he had never heard of a difficulty between defendant (a negro) and one Milton Polk, a white man, and wherein the details thereof were inquired into, the Court held that the testimony was incompetent for two reasons: (1) that ''it is not competent nor relevant to the issue to admit in rebuttal on the part of the prosecuting evidence of a series of independent facts, each forming a constituent offense, or, in other words, evidence of particular facts or crimes tending to impeach the defendant's good reputation.'' This announcement of the rule was a quotation from Wharton on Criminal Evidence, 10th Ed., Vol. 1, Section 61. And, (2) the Court said ''there was a wrongful appeal to race prejudice.'' The Court then cited with approval, and quoted from, the case of Kearney v. State, 68 Miss. 233, 8 So. 292, wherein Judge Cooper, speaking for this Court, declared the true rule to be that ''neither the accused nor the state can resort to particular facts to establish or refute the character thus put in issue,'' and, further, that the accused ''cannot be expected to be able to defend particular acts, nor is it just that, failing so to do, the burden of guilt in reference to a particular disconnected transaction should be fixed upon him, and the motive or

malice thus discovered imputed to the separate fact under examination." And to the same effect is Brown v. State, 72 Miss. 997, 17 So. 278, and Wigmore on Evidence, Vol. 1, Section 194, p. 233. Mr. Wigmore makes the observation that this testimony "is objectionable, not because it has no appreciable probative value, but because it has too much." The admission of evidence as to the details of the alleged previous misconduct of an accused, and to establish as a fact a prior commission of a crime by him, would result in the raising of a great number of collateral issues, the trial of which might be almost interminable, and divert the minds of the jury from the main issue, with a natural tendency to give excessive weight to the prior misconduct in determining the guilt of a present charge.

Since the Court merely applied the majority rule in the case of Smith v. State, supra, without discussing the same or citing authority to sustain it, and in the Herring case made no reference to the doctrine permitting cross-examination of the defendant's character witnesses as to *reports* of particular acts, for the purpose of testing the credibility of the character witnesses, but proceeded on the ground that the cross-examination in that case was for the sole purpose of refuting evidence introduced by the defendant as to his character, and to raise the race issue to the prejudice of the accused, we prolong this opinion beyond the length that would otherwise be justified.

The Annotation in 71 A. L. R. hereinbefore referred to is a somewhat exhaustive review of the subject of the cross-examination of character witnesses for accused with reference to particular acts or crimes, and the rule seems to be well sustained by the authorities therein discussed to the effect that a witness who testifies to the good reputation or character of a defendant in a criminal prosecution may be interrogated on cross-examination with respect to *rumors* or *reports* of particular acts imputed to the defendant, and as to what the witness had *heard* of specific charges of misconduct made against the

defendant, although there are a number of cases cited therein which hold to the contrary. However, it is not the rule that specific acts of misconduct may be established as facts, or that the cross-examination should be extended to the details or particulars of the defendant's previous acts of wrongdoing. Glascoe v. State, 85 Tex. Cr. R. 234, 210 S. W. 956, and other cases cited in the annotation.

We find that none of the other assignments of error urged on this appeal are such as to merit discussion or require a reversal of the judgment appealed from, but because of the error hereinbefore pointed out, and for the reasons hereinbfore stated, we feel constrained to reverse and remand the cause for a new trial. The question is not merely whether the jury may have found the defendant guilty of murder in the instant case, even though the proof of details of his former act of violence against another person with a pistol had not been made, but also whether such proof may have influenced the jury to fix the death penalty as his punishment.

Reversed and remanded.