542 So.2d 906 (1989)
Mose DANTZLER, Sr.
v.
STATE of Mississippi.
No. 59156.
Supreme Court of Mississippi.
April 5, 1989.
*907 William L. Ducker, Purvis, for appellant.
Kent F. Hudson, County Atty., Hattiesburg, for appellee.
En Banc.
ROY NOBLE LEE, Chief Justice, for the Court:
Mose Dantzler, Sr. was convicted in the Justice Court, Lamar County, Mississippi, for possession of seventeen (17) cans of beer while en route to his home in Purvis, Mississippi. He was sentenced to ninety (90) days in jail and fined two hundred fifty dollars ($250.00) pursuant to Mississippi Code Annotated § 67-3-13 (1972), as amended.
Dantzler appealed the conviction to the Circuit Court of Lamar County, which court denied his motion to dismiss and then granted a motion for an interlocutory appeal to this Court on the sole issue of whether or not the possession of such beer, legally purchased in the City of Hattiesburg, constituted a violation of the law while he was traveling home in the "dry" part of Lamar County. We consider the appeal and affirm the lower court.
Lamar County is a "dry" county pursuant to elections under the Local Option Law held in 1937 and again in 1978. Possession of beer with an alcoholic content of not more than four percent (4%) by volume weight is legal in the City of Hattiesburg by virtue of an election held pursuant to Mississippi Code Annotated § 67-3-9 (1972), as amended. The western portion of Hattiesburg, located in "dry" Lamar County, was annexed to the municipality subsequent to the elections held in Lamar County and Hattiesburg, which determined the "dry" or "wet" status. By virtue of the annexation, that part of Hattiesburg located in Lamar County became "wet." Dantzler purchased his beer there.
The sole question before this Court is whether or not the possession of beer with an alcoholic content of not more than four percent (4%) by volume weight is legal in a county which has a municipality that allows the sale and possession of such beer and whether or not § 67-3-13, as amended, is unconstitutional because it denies Dantzler equal protection under the laws and constitution of the State of Mississippi and the Constitution of the United States.

Case Background
Effective February 26, 1934, the legislature enacted House Bill 26, which provided in part the following:
Section 1. Be it enacted by the Legislature of the State of Mississippi, That it shall hereafter, subject to the provisions hereinafter set forth, be lawful in this state to transport, store, sell, distribute, possess, receive and/or manufacture wine and beer of an alcoholic content of not more than four per centum by weight.
Sec. 2. Provided, that if any county, at an election held for the purpose under the election laws of the state, shall by a majority vote of the duly qualified electors voting in the election determine that the transportation, storage, sale, distribution, receipt, and/or manufacture of such beverages, shall not be permitted in such county, then the same shall not be permitted therein. Provided, however, that nothing in this section shall prohibit the consumer from possessing or the taking *908 into any county electing to come from under this section said wines and beers for his personal consumption... .
Ch. 171, Miss.Gen.Laws 1934 at 392.
The above statute made the possession of beer legal in the State of Mississippi, regardless of the Local Option Law prohibiting the transportation, storage, sale, distribution, receipt and/or manufacture of beer in the county.
Subsequently, Chapter 224, Miss.Gen. Laws 1942, was enacted by the legislature, which was practically identical to the Laws of 1934, but provided that no election on the question of legality of beer in the county shall be held more often than once in five (5) years. The Laws of 1934 provided that no election on the question shall be held in any one county "oftener that once in two (2) years." The 1942 law, as did the 1934 law, contained the following: "provided, however, that nothing in this section shall prohibit the consumer from possessing or the taking into any county electing to come from under this section said wines and beers for his personal consumption."
In Hoyle v. State, 216 Miss. 330, 62 So.2d 380 (1953), Hoyle was convicted of the possession of thirty-one (31) quart bottles of beer in Itawamba County, which had voted to prohibit the transportation, storage, sale, distribution, etc. of beer in the county. In reversing Hoyle's conviction and discharging him, the Court considered Chapter 171, Miss.Gen.Laws of 1934, and Laws of 1942, and said:
We come now to the proposition which we find controlling in this case, resulting in a sustaining of the demurrer to the indictment. The appellant is charged with the offense of unlawfully having "in his possession beer, for the unlawful purpose of sale" in a non-beer county. Is the "possession" of beer, not shown to be of an alcoholic content greater than four per centum by weight, in such county, a crime under our statutes? We think not.
Prior to the enactment of Chapter 171, Laws of 1934, the wine and beer statute, the possession of and traffic in all intoxicating liquors was prohibited. Then the act of 1934 provided that it shall, subject to the local option provisions, "be lawful, in this state to transport, store, sell, distribute, possess, receive and/or manufacture wine and beer of an alcoholic content of not more than four per centum by weight." Sec. 10207, Code of 1942. Emphasis supplied. It is then provided in this statute that if any county holds an election for the purpose and determines that "the transportation, storage, sale, distribution, receipt, and/or manufacture of such beverages, shall not be permitted in such county, then the same shall not be permitted therein." Section 10208, Code of 1942. A proviso is added that "nothing in this section shall prohibit the consumer from possessing or the taking into any county electing to come from under this section said wines and beers for his personal consumption." It is noted that in three instances, after this proviso, the section enumerates the acts which may be forbidden, and each time the word "possession" is omitted.
It is clear to us that the legislature, having legalized the "possession" of beer of an alcoholic content of not more than four per centum by weight, did not empower counties to forbid possession thereof when it authorized them to prohibit the transportation, storage, etc., without mentioning possession. Reference to Webster's New International Dictionary (Second Edition) shows the principal definition of "storage" as  "Act of storage, or state of being stored; specif., the safekeeping of goods in a warehouse or other depository." Obviously, "storage" and "possession" are not the same thing.
216 Miss. at 333-34, 62 So.2d at 382.
After the Hoyle decision was rendered, the legislature enacted effective February 1, 1956, House Bill 153, Miss.Gen.Law 1956, which amended Section 10208, Mississippi Code of 1942, codified from the Laws of 1934 and 1942. House Bill 153 deleted the provision that nothing in those laws shall prohibit the consumer from possessing or taking into any county wines and beers for his personal consumption. The Laws of 1956 further provided:

*909 (b) In any county which under the provisions of subsection (a) hereof has elected to prohibit the transportation, storage, sale, distribution, receipt and/or manufacture of such beverages in such county, any person found possessing any beer or wine of any quantity whatsoever shall, on conviction, be imprisoned not more than ninety (90) days or fined not more than five hundred dollars ($500.00) or both such fine and imprisonment.
After enactment of the Laws of 1956, Russell v. State, 231 Miss. 176, 94 So.2d 916 (1957), was decided May 6, 1957, by this Court. Russell was convicted in the Circuit Court of Copiah County for the unlawful possession of beer in a county which, by local option, had theretofore prohibited the transportation, storage, sale, distribution, etc. of beer. The Court said:
The question is whether the 1956 Act applies to counties which by a local option election held prior to the 1956 Act have prohibited the transportation, etc. of beer, but not its possession for personal consumption, and which have not had an election under the 1956 Act. We think not, so appellant's conviction must be reversed.
231 Miss. at 181, 94 So.2d at 917.
The Court considered and discussed the 1956 act hereinabove referred to, and said:
With that fact in mind, consider subsection (b) of the 1956 Act. It provides: "In any county which under the provisions of subsection (a) hereof has elected to prohibit the transportation, storage, sale, distribution, receipt and/or manufacture of such beverages in such county, any person found possessing any beer or wine of any quantity whatsoever shall, on conviction, be imprisoned" or fined, or both, as stated. (Emphasis added.) Subsection (b) expressly states that in any county "which under the provisions of subsection (a) hereof" has elected to prohibit transportation, etc., the possession of beer is illegal. There has been no election in Copiah County under the provisions of subsection (a) of the 1956 Act. The Copiah County local option election was held in 1937. At that time the people voted on whether to prohibit the transportation, etc. of beer in that county, but not the possession of beer for personal consumption.
231 Miss. at 187, 94 So.2d at 920.
After the Russell decision, the legislature finally put the question to rest by enacting House Bill 95, Miss.Gen.Laws 1958, effective February 7, 1958, which amended Section 10208, Mississippi Code of 1942, as amended by Ch. 252, Miss.Gen. Laws 1956. In pertinent part, House Bill 95 states the following:
(b) In any county which has at any time since February 26, 1934, elected, or which may hereafter elect, to prohibit the transportation, storage, sale, distribution, receipt, and/or manufacture of such beverages in such county, it is hereby declared to be unlawful to possess such beverages therein. Any person found possessing any beer or wine of any quantity whatsoever in such county shall, on conviction, be imprisoned not more than ninety (90) days or fined not more than five hundred dollars ($500.00) or both such fine and imprisonment.
We have been cited to no case, nor have we found one, which attacks the validity of House Bill 95, Miss.Gen.Laws 1958, codified as Mississippi Code Annotated § 67-3-13 (1972), as amended. The statute is plain on its face and makes unlawful the possession of beer in any county which, since February 26, 1934, has elected, or which may thereafter elect, to prohibit transportation, storage, sale, distribution, receipt, etc. of beer.

Law
Without question, the Mississippi Legislature has provided that the possession of beer is unlawful in any county which has at any time since February 26, 1934, elected, or which may, after February 7, 1958, elect, to prohibit the transportation, storage, sale, distribution, receipt, and/or manufacture of wine and beer of an alcoholic content of not more than four per centum by weight in such county. Mississippi § 67-3-13 (1972), as amended, codified from House Bill 95, Miss.Gen.Laws 1958. *910 Dantzler contends that § 67-3-13 is unconstitutional because it denies him equal protection under the Laws of the State of Mississippi and the Constitution of the United States.
Mississippi Code Annotated § 67-3-9 (1972) provides for local option elections in municipalities of the State of Mississippi having a population of not less than 2,500, according to the latest Federal Census. By reason of that statute, the City of Hattiesburg, along with that part of Lamar County within said city, became "wet", and the sale and possession of beer became legal. 45 Am.Jur.2d Intoxicating Liquors, § 83, states the general rule with reference to the constitutionality of local option laws:
Class legislation; equal protection, and due process.
Local option laws have usually been upheld as against objections that they unconstitutionally discriminate between individuals or localities, or against objections on the ground of lack of uniformity. The fact that local option may be adopted in some parts of the state and rejected in others does not render the law unconstitutional as lacking in uniformity, provided it is or may be submitted in the same way to all political divisions of the state.
Constitutional guaranties of the equal protection of the laws and of due process are not denied by a local option law merely because under it the traffic in intoxicating liquors may be made a crime in certain territory and permitted elsewhere. Nor is there any violation of such provisions because the act excepts from its operation manufacturers, persons who give away liquors in their private dwellings, and railway corporations dispensing liquors in dining and buffet cars under state license, or because it permits sales by druggists either generally or merely for medicinal, artistic, scientific, and mechanical purposes.
A state local option law is not, because it fails to define the words "wholesale" and "retail" as used in the act, violative of the due process clause of the Federal Constitution as vesting legislative power in the judiciary.
State v. Wood, 187 So.2d 820 (Miss. 1966), involved an appeal from a judgment of the Circuit Court of Hinds County, Mississippi, sustaining a motion to quash the affidavit charging Wood with the possession of intoxicating liquors in violation of the Mississippi statute. The constitutional question of due process was before the Court. The Court held (1) the State has full and complete control over all matters relating to intoxicating liquors within its borders, citing U.S.C.A. constitutional amendments 14, 18, 21, § 2; (2) it is purely within the prerogative of the State to say whether or not its citizens may possess or use intoxicating liquor; (3) a citizen has no inherent right to possess intoxicating liquors. In holding that there was no due process violation, the Court said:
It is well to be retrospective and to contemplate the source of our power and duty, and to remind ourselves that this Court has the power to construe the Constitution and thus define the powers of the three branches of our Government. This calls for objective deliberation and for the exercise of self-restraint on the part of this Court not to overstep its proper and rightful power. Therefore, with due caution, we should endeavor to avoid usurping powers that are not rightly ours, in the light of the knowledge that men and their self regulatory institutions often fail to practice self-restraint and that history itself is largely the record of the endless struggle between men and the lust of governments to usurp and wield absolute power. Today is a unique time for the exercise of self-restraint by all courts of last resort. Ours is a time when people generally are impatient and anxious to accomplish by any means available that which they dream to be desirable social ends. Legislative action and the processes of properly amending the Constitution are too laborious and tedious methods for those who would fain rectify the apparent inadequacies in society which have failed of prompt correction by other devious means.
An insidious notion, gaining in popularity, that holds capacity for serious mischief *911 to our governmental structure is a view of the judicial function, which is that all the maladjustments, deficiencies, or dissentions in our society which have failed of correction by other means should find a panacea in the courts. Concedingly, as is vehemently argued by appellee, that the liquor situation in Mississippi is verily a social problem which may have been poorly managed and fraught with hypocrisies, and that corrective measures may be sorely needed, nevertheless, this Court will not yield to the temptation, however attractive it may appear, to attempt the correction of the problem and do by judicial fiat that which the Constitution as well as the best tradition of our system of jurisprudence sternly forbids this Court to do.
187 So.2d at 831.
This Court upheld the constitutionality of Ch. 279, Miss.Gen.Laws 1958, presently codified as Mississippi Code Annotated § 67-3-13 (1972), in Kelly v. State, 237 Miss. 112, 113 So.2d 540 (1959). The Court said:
In summary, the Court holds that Miss. Laws 1958, Chapter 279 is constitutional and valid, and states an enforceable and definite offense. However, the affidavit is insufficient to charge an offense under the 1958 act, so appellant's conviction must be reversed. Since the affidavit is amendable, the cause is remanded for further proceedings consistent with this opinion.
113 So.2d at 543.
In Ziffrin, Inc. v. Reeves, Commissioner of Revenue of Kentucky, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939), the United States Supreme Court, in upholding the power of the Commonwealth of Kentucky to regulate and control the manufacture, distribution and sale of intoxicating liquors, said:
The Twenty-first Amendment sanctions the right of a State to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause. Without doubt a State may absolutely prohibit the manufacture of intoxicants, their transportation, sale, or possession, irrespective of when or where produced or obtained, or the use to which they are to be put. Further, she may adopt measures reasonably appropriate to effectuate these inhibitions and exercise full police authority in respect of them. [Citations omitted].
Having power absolutely to prohibit manufacture, sale, transportation, or possession of intoxicants, was it permissible for Kentucky to permit these things only under definitely prescribed conditions? Former opinions here make an affirmative answer imperative. The greater power includes the less.... The State may protect her people against evil incident to intoxicants, ... and may exercise large discretion as to means employed.
308 U.S. at 138-39, 60 S.Ct. at 167, 84 L.Ed. at 135. See also Heublein, Inc. v. South Carolina Tax Commission, 409 U.S. 275, 93 S.Ct. 483, 34 L.Ed.2d 472 (1972).
In Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966), the United States Supreme Court, when construing Chapter 531, 1964 Session Laws of New York, which statute the appellants claimed violated, among other rights, the due process clause and the equal protection clause of the 14th amendment, found those contentions to be without merit. The United States Supreme Court said:
Consideration of any state law regulating intoxicating beverages must begin with the Twenty-first Amendment, the second section of which provides that: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." As this Court has consistently held, "That Amendment bestowed upon the states broad regulatory power over the liquor traffic within their territories." [Citations omitted]. The first contention amounts to a claim of a deprivation of due process of law based on the argument that § 9 is not designed to promote temperance and that it is an unwise, impractical, and oppressive law. But it is *912 not "the province of courts to draw on their own views as to the morality, legitimacy, and usefulness of a particular business in order to decide whether a statute bears too heavily upon that business and by so doing violates due process. Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation. There was a time when the Due Process Clause was used by this Court to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy. * * * The doctrine * * * that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely  has long since been discarded. We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws. * * *" [Citation omitted].
384 U.S. at 41-47, 86 S.Ct. at 1259, 16 L.Ed.2d at 342.
The importance and significance of this decision are enormous. If this Court agreed with the contention and argument of Dantzler and reversed the lower court, the effect would be to abolish prohibition and nullify local option law in Mississippi. Alcoholic beverages could be purchased wherever they are legal and carried into "dry" areas for consumption, even where a majority of the people have voted to maintain such areas "dry." The Court would have thwarted the will and rights of the people by destroying their freedom of choice.
We conclude that Mississippi Code Annotated § 67-3-13, as amended, does not deny Dantzler equal protection under the laws and constitution of the State of Mississippi and the Constitution of the United States, nor is there any invasion of his constitutional right of privacy. His sole question and assignment of error presented to this Court is without merit. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
DAN M. LEE, P.J., and PRATHER, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.
HAWKINS, P.J., files separate dissenting opinion joined by ROBERTSON, J.
ROBERTSON, J., files separate dissenting opinion joined by HAWKINS, P.J.
BLASS, J., not participating.
HAWKINS, Presiding Justice, dissenting:
I do not question the authority of a law which permits communities on their own to determine whether the sale of alcohol will be legal or outlawed. Nor do I question the authority of the Legislature to outlaw statewide  from border to border  the possession or sale of alcohol.
What I do say is that under our Constitution no law which makes it perfectly legal for a person to possess a substance in one place can make the same person a criminal if he possesses the same substance in his own home a hundred feet away. Such a fine, artificial distinction between a law-abiding citizen and an outlaw cannot stand.
A law which deprives a citizen of a Constitutional right is not made valid simply because the highest of motives and best of intentions were behind its enactment. Citizens, regardless of their motives, cannot in this manner make criminals out of their fellow citizens.
The majority states that if this case were reversed, "the effect would be to abolish prohibition and nullify local option law in Mississippi."
With respect, I disagree, I am of the view just the reverse will occur. As the majority notes, until 1958 the Legislature wisely made no attempt to prohibit the possession of beer in a "dry" county, only its sale, storage, distribution, manufacture were prohibited. Anyone over fifty years *913 of age knows the State was a lot "drier" before 1958 than it has ever been since.
By permitting this unconstitutional part of the beer laws to remain, we leave sheriffs and local law enforcement officials with a law they cannot enforce. This will create disrespect for the law.
ROBERTSON, J., joins this opinion.
ROBERTSON, Justice, dissenting:
One who legally purchases beer or other intoxicating liquors anywhere in the state of Mississippi may, as a matter of implied constitutional right, transport it to his home in a "dry" area. With respect to my colleagues in the majority, I dissent.
I begin with the right of privacy long ago vested in every person in this state. See, e.g., Prescott v. Bay St. Louis Newspapers, Inc., 497 So.2d 77, 79 (Miss. 1986); Candebat v. Flanagan, 487 So.2d 207, 209-12 (Miss. 1986); Deaton v. Delta Democrat Publishing Co., 326 So.2d 471, 473 (Miss. 1976); Martin v. Dorton, 210 Miss. 668, 672-74, 50 So.2d 391, 392-93 (1951). The right has been labeled "the right to be let alone." Warren and Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193, 195 (1890). Some have found the source of the right in the natural law. Pavesich v. New England Life Insurance Co., 122 Ga. 190, 194-97, 50 S.E. 68 (1904). We have grounded the right in the positive constitutional law of this state. Miss. Const. Art. III, § 32 (1890); In Re Brown, 478 So.2d 1033, 1040 (Miss. 1985). As such, the right is an
entitlement of an individual he or she may claim at his or her election ... no matter how inconvenient society or its members may deem it.
Brown, 478 So.2d at 1036. We have cited with approval Justice Brandeis' description of the right of privacy as "the most comprehensive of rights and the right most valued among civilized man." In Re Brown, 478 So.2d at 1039, citing Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944, 956 (1928) (Brandeis, J., dissenting).
The right of privacy extends to a person's home as nowhere else. Indeed, there is no principle more deeply imbedded in our law than that "no matter how humble, a man's home is his castle." May v. State, 199 So.2d 635, 639 (Miss. 1967); Jones v. State, 170 Miss. 581, 586, 155 So. 430, 431 (1934). Within this state's constitutionally based right of privacy is the right, within the privacy of one's home, to possess, use or consume any item or substance that may lawfully be purchased or acquired within this State.[1] Beer may be so purchased in Lamar County within the city limits of Hattiesburg. From these premises we imply a right to transport the beer from a place where Dantzler could lawfully purchase it, i.e., Hattiesburg, to a place where he may lawfully possess, i.e., his home situated in Purvis, Lamar County.
There is a powerful analogy in our law. One may not be landlocked or isolated on his homestead. Where a person conveys an interior lot to another, the purchaser by implication acquires a "way of necessity" from his land to the public roads. Quin v. Sabine, 183 Miss. 375, 382-83, 183 So. 701 (1938); Board of Supervisors of Lamar County v. Elliott, 107 Miss. 841, 846, 66 So. 203 (1914). Pleas v. Thomas, 75 Miss. 495, 500, 22 So. 820, 821 (1897) notes that the reasons for this rule "need not be sought afar, for they are obvious at a glance." As the owner of such property has the right to use, occupy and enjoy it, he must necessarily have a right of ingress and egress. Indeed, without this right the owner's enjoyment of this property is greatly restricted. Warwick v. Pearl River Valley Water Supply District, 246 So.2d 525, 528-29 (Miss. 1971). This Court early went so far as to provide that a purported prosecution of an isolated landowner for trespass may be enjoined. Davis v. Fortenberry, 114 Miss. 294, 300, 75 So. 119 *914 (1917). This premise enjoys constitutional status. Miss. Const. Art. IV, § 110 (1890).
By analogy, the purchase of beer in the Lamar County portion of Hattiesburg where such purchase is legal, by one who of right may possess and consume that beer within the privacy of his own home, necessarily carries with it the right to transport the beer across public roads.[2] Otherwise, one may be effectively prevented from enjoyment of his legal right to purchase beer in a "wet" municipality and his constitutional right to possess and consume such legally purchased beer within the privacy of his home.
HAWKINS, P.J., joins in this opinion.
BLASS, J., not participating.
NOTES
[1] The federal constitutional right of privacy empowers an individual within the privacy of his own home to possess some items which may not, as a matter of state law, be legally purchased. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (pornography); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (contraceptives).
[2] This view has historical analogies that ought to be noted. United States v. Gudger, 249 U.S. 373, 39 S.Ct. 323, 63 L.Ed. 653 (1919) strikes down the efforts of Virginia, then a dry state, to prosecute a man who had purchased seven quarts of whiskey in Maryland, a wet state, and was, when arrested in Virginia, aboard a train en route to North Carolina, also then a wet state. Florida, a local option state, once prohibited a dry county from prosecuting one who purchased intoxicating liquors in a wet county and, when arrested in the dry county, was en route over a public highway, to another wet county. Foxworth v. Law, 77 Fla. 596, 82 So. 55 (1919); Ex Parte Francis, 76 Fla. 304, 79 So. 753 (1918). See also Barber v. Commonwealth, 182 Ky. 200, 247, 206 S.W. 290 (1918).