MARTIN *v*. DORTON.

Division A.   Feb. 5, 1951.

No. 37805 (50 So. (2d) 391)

E. K. Windham, for appellant.

Donald Franks, for appellee.

McGehee, C. J.

The primary question presented for decision on this appeal is whether or not a public officer has the legal right to commit an assault and battery on a newspaper photographer for taking his picture for publication without the consent of such official. Or, to state the point differently, does the taking of the photograph of a public official, for publication in a newspaper, without his consent, amount to an assault or trespass by the photographer, such as to constitute the first blow, and so as to justify an assault and battery in return?

The photographer in the instant case, Harold Dorton, recovered a judgment for the sum of $200 as actual and punitive damages against the defendant, Sale Martin, who was sheriff of Prentiss County on the occasion of the assault and battery complained of. The defendant sheriff admitted both in his answer and on the trial that he

struck and kicked the plaintiff for taking his photograph, but contends that he did not do so until the same had been taken over his protest, and that, therefore, the trial court was in error (1) in peremptorily instructing the jury to find for the plaintiff on the question of liability; and (2) in refusing an instruction on behalf of the defendant that "if the jury believes the defendant struck the plaintiff with his open hand (the instruction making no reference to the admitted fact that he also kicked the photographer) and that the plaintiff suffered no substantial injury, then the plaintiff can recover only nominal damages".

Shortly prior to the occasion complained of, a number of citizens had jointly complained to the sheriff that a building then under construction in their community was intended for use in the sale of beer in violation of law, and suggested that for this reason he should prevent the completion of such structure. The sheriff denied his authority to do so and referred these citizens to the county prosecuting attorney for advice in the premises. The latter official, of course, stated to them that the sheriff had no authority to prevent the completion of the building, but is alleged to have suggested another and complete remedy, but one which they did not have the legal right to invoke.

After the building had been completed, a considerable group of both men and women of the community appeared at the courthouse to again talk with the sheriff about the matter. In the meantime, the county prosecuting attorney had informed the sheriff of the purpose of their assembling to interview him at the courthouse, and with the result that the sheriff declined to talk further with them, except to state that he knew what they had come for, and promised that if either of them would make an affidavit of any violation of the law he would go and get the alleged offender. He thereupon retired to his office.

The local newspaper had learned of the presence of the crowd at the courthouse and requested the plaintiff Dorton to accompany the newspaper representative over there for the purpose of taking some photographs. The plaintiff was not a member of the group of protesting citizens who by their presence were intimating that the sheriff had been engaged in strenuous inactivity in the matter of law enforcement, but he went to the courthouse only as a photographer and at the instance of the local newspaper as aforesaid. He made a photograph of this assembled group of citizens, who had remained there to sign petitions for better law enforcement; and when the sheriff came out of his office to leave the courthouse for lunch the plaintiff then took the picture of the said officer, and with the result that the latter struck and kicked him.

The plaintiff and some of his witnesses testified that he was struck on the back of the head with a blackjack drawn from the pocket of the sheriff, who then kicked him once or twice. Whereas the sheriff testified that he only hit him with his hand and then kicked him. The plaintiff claims that he suffered much physical pain, humiliation, embarrassment, etc., whereas the sheriff contends that the assault and battery was not of sufficient severity to cause any injury whatsoever to the plaintiff.

The only other conflict in the testimony is that the plaintiff testified that he took the picture before the sheriff made any protest, whereas the latter testified that he asked the plaintiff not to take his picture, and that he did not strike and kick him until he had disregarded the protest.

The sheriff having admitted the assault and battery both in his answer and testimony, the action of the trial court in peremptorily instructing the jury to find for the plaintiff on liability was not error, unless the sheriff was justified as a matter of law in doing what he did, since in no event was the sheriff entitled to have the jury return a verdict for only nominal damages;

such a verdict would have been against the great weight of the evidence. Moreover, a verdict for only nominal damages would have been contrary to the admitted facts, and would have been supported alone by a conclusion or opinion of the defendant as to whether or not striking and kicking the plaintiff really caused him any discomfort or pain.

The defense interposed herein is predicated upon that distinct and independent legal concept which has now become known in American jurisprudence as the "right of privacy", but which may be more precisely defined as the right to be let alone.

Prior to 1890 some courts had recognized and given effect to rights that were essentially the same as the right of privacy, under the theory that there had been an invasion of a property right, breach of contract, confidence, etc., but the principle was not introduced and defined as a legal doctrine, independent of the law of trespass, libel, and slander, until the publication of an article by Warren and Brandeis (later Justice Brandeis) during the year 1890 in 4 Harvard L. Rev., 193. Thereupon, the comment was made in 12 Columbia L. Rev., 693, that their article "enjoys the unique distinction of having initiated and theoretically outlined a new field of jurisprudence."

During the intervening 60 years, our own court has had no occasion to decide the question as to the right of either a private person, public official, or of any one of that class of persons who has attained in an unofficial capacity the questionable and undefinable status of a "public figure", to legally enforce a complaint for an alleged invasion of his right of privacy, whether the attempt to do so be by action brought by such person, officer or public figure, or in the defense of an action for damages against him as in the case at bar. But a majority of the courts in this country that have dealt with the question at all have come to recognize and enforce the right of a *private person* to obtain redress for an in-

vasion of his or her privacy by means of the unauthorized taking of photographs for publication in a newspaper, or for use in commercial advertising, etc., whereas it is generally recognized by most, if not all, of the courts and the text writers that the law on the subject of "an inviolate personality" does not prohibit the publication, within reasonable limitations, of matters concerning a public official in which the public has a general and legitimate interest, or the use of the photographic likeness of a public official in connection with the publication of legitimate news; and that this is likewise true in regard to other persons who have by their achievements won fame, public recognition and favor in a particular field of endeavor, or who have otherwise distinguished themselves for either meritorious or infamous conduct to the good or detriment of society, respectively.

The question is fully annotated in 138 A. L. R. 22, 168 A. L. R. 446, and 14 A. L. R. (2d) 750, and is also discussed in the text of 41 Am. Jur., under the chapter entitled Privacy, 924, et seq.; 51 C. J., entitled "Right of Privacy", 816, et seq., and annotations thereunder; and Restatement, Torts, Vol. 4, Ch. 42, page 398; wherein both the decisions and the texts disclose that the right of privacy is denied, within reasonable limitations, to public officials and other persons who have by their achievements and doings sought and obtained public recognition and favor. In other words, one who engages in public affairs and public life to an extent which draws the public interest upon him may be deemed to have consented to the publication of his name and photograph in connection with a legitimate news story, according to the authorities cited above.

It has been otherwise stated in a leading case that "any person who engages in any pursuit or occupation or calling which calls for the approval or patronage of the public submits his private life to examination by those to whom he addresses his call, to any extent that may be necessary to determine whether it is wise and

proper and expedient to accord to him the approval or patronage which he seeks''. Pavesich v. New England Life Ins. Co., 122 Ga. 190, 50 S. E. 68, 72, 69 L. R. A. 101, 106 Am. St. Rep. 104.

The preponderance of authority likewise seems to sustain the view that in the case of a person who commits some act of great notoriety, or who, whether willingly or not, becomes an actor in an occurrence of public or general interest, the point is often reached where the freedom of the press and the right of the public to obtain the information becomes dominant over the individual's desire for privacy. For instance, it has been held that one who achieves an outstanding success as an inventor, editor, preacher, humorist, author, athlete, or moving picture star, or even when one's only claim to prominence is the infamy he has achieved as an outlaw or other felon or fugitive from justice, becomes in each instance a matter of news of legitimate public interest, according to the principles announced by the majority of the courts that have had occasion to pass at all on an alleged invasion of the right to privacy.

However, we are concerned here with the right of privacy only to the extent that a public official is involved. The case being one of first impression before the courts of this State, we express no opinion as to what extent the freedom of the press should be accommodated to the right of privacy wherein these apparently conflicting doctrines may affect a private person or one who has obtained the status of a public figure in an unofficial capacity. We merely recognize and apply here the rule adopted in other jurisdictions in holding that ▮▮ a public officer can not complain that his right of privacy has been invaded when his photograph is taken for publication in connection with a legitimate news story.

Some of the courts have sustained the right of privacy on the ground of the long recognized right of life, liberty and the the pursuit of happiness. However, as applied to public officials, it is to be conceded that most politicians

and officeholders are entitled to live, but as to their enjoying a full measure of liberty or the unbounded pursuit of happiness it is doubtful if this time honored principle is sufficiently potent or self-executing in that behalf. It seems that the doctrine formulated by Warren and Brandeis and the grounds upon which it is predicated is the safer view, denying to them the right of privacy at all, within reasonable limitations.

While it is true that the modern invention of instantaneous photography now in vogue is such as to afford the means of securing a portraiture of an individual's face and form without first giving an opportunity in advance for adequate adjustment of the facial expression, wearing apparel and posture of the person to be photographed, and often may not result in a good likeness being obtained such as would be pleasing to the officer involved and to his admiring friends and constituents, it is nevertheless not a sufficient ground to justify an assault and battery on an otherwise inoffensive photographer. If a servant of the dear people is thus humiliated by a published photograph that does not seem to do justice to him, the law leaves his feelings of disappointment and chagrin to be helped and vindicated by the tremendous force of public sympathy.

Strange as it may seem, however, most public men are natural born pacifists even toward an impertinent person with a camera, while now and then a few assume a more or less beligerent attitude, either real or fancied, depending upon the circumstances in each case and the mood of the victim.

In the instant case the photograph of the defendant appeared in the local newspaper, following the assault and battery complained of, and was used in connection with the news story published in the local paper, along with the group of men and women who had gathered at the courthouse, and his photograph would seem to compare favorably with that of most of the other sheriffs we have known, according to the photograph appearing

in the record before us in the news item published in the local paper, concerning the visit of the citizens and the suit of the plaintiff which followed.

From the foregoing views it follows that the judgment of the trial court in assessing damages in favor of the aggrieved photographer must be affirmed.

Affirmed.