497 So.2d 77 (1986)
Melvin Alexander PRESCOTT
v.
BAY ST. LOUIS NEWSPAPERS, INC.
No. 55891.
Supreme Court of Mississippi.
October 15, 1986.
Rehearing Denied November 19, 1986.
John C. Ellis, Hollis C. Thompson, Jr., Gulfport, for appellant.
W. Joel Blass, Henry F. Laird, Jr., Mize, Thompson & Blass, Gulfport, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
Melvin Alexander Prescott appeals the summary judgment entered by the trial court against him in this invasion of privacy suit. Prescott brought suit in Hancock County Circuit Court on April 13, 1983. He alleged that Bay St. Louis Newspapers, Inc., owner of The Sea Coast Echo, a twice weekly publication, invaded his privacy by publishing pictures and articles concerning him on October 21, 1982. This complaint was dismissed June 17, 1983 for failure to state a claim upon which relief could be granted. An amended complaint was filed July 7, 1983 alleging basically the same cause of action arising from the same October 21, 1982 publication. Discovery was begun but not completed when Bay St. Louis Newspapers, Inc. moved for summary judgment. A hearing on this motion and other motions interposed by Prescott was held April 20, 1984. Summary judgment was granted May 18, 1984. Prescott appeals assigning as error:
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT, AS THE GRANTING OF SUCH A MOTION WAS PREMATURE SINCE THERE WERE UNRESOLVED QUESTIONS OF LAW AND FACT.
Because we agree that Prescott was not placed in a false light as a matter of law, we affirm.

STATEMENT OF THE FACTS
On October 21, 1982, The Sea Coast Echo published two news items, each accompanying a picture depicting different aspects of the same one-car traffic accident. The accident was newsworthy because the vehicle struck a utility pole and caused a power outage in Bay St. Louis. *78 One picture and news item appeared on the front page. A utility truck and a repairman using the truck's hydraulic arm lift and basket are pictured. The repairman is working to repair a fallen power line. Also visible in the background is a vehicle. The caption reads:
POWER OUTAGE-Dave Peranich of Mississippi Power Company is maneuvered toward tangled electrical wires following an accident at approximately 10:30 p.m. Tuesday near 638 North Beach Boulevard. A vehicle driven by Melvin A. Prescott, 43, of 102 Felicity Street in Bay St. Louis, went off the road while traveling north, sheared off the telephone pole and then struck a large oak tree some thirty feet from the road. A headlight on a vehicle driven by William J. Delligatte of 104 Beverly Drive in Bay St. Louis, was slightly damaged when Delligatte, who was traveling south several minutes after the accident, struck a telephone wire dangling from the broken telephone pole. Electrical power from Bay View Court to Leonhard Avenue was interrupted for some two hours. On Oct. 5, 1982 Prescott was charged with driving under the influence, leaving the scene of an accident and reckless driving. Prescott was charged with DUI and improper lane usage by the Waveland Police Department. Bay St. Louis Patrolmen George Weatherly and Wilbert Dorsey responded to the Tuesday accident. (Staff photo by Brent Macey)
The second picture appears at page 7 in the paper's front section. It depicts a vehicle tangled in what appears to be tree limbs. The vehicle's hood is crumpled and the driver's door is open. A man dressed in a law enforcement uniform is holding a flashlight as if examining the truck. It is dark. The caption reads:
HEAVILY DAMAGED-Bay St. Louis Police officer George Weatherly inspects the vehicle driven by Melvin A. Prescott of 102 Felicity Street Tuesday at approximately 11 p.m. Prescott apparently lost control of the vehicle near 638 North Beach Boulevard, sheared off a telephone pole and crashed into the large oak tree below. Prescott was charged with DUI, leaving the scene of an accident and reckless driving. Power was interrupted in the parts of the Cedar Point area of the city for some two hours while Mississippi Power Company employees worked to restore the lines. (Staff photo by Brent Macey)
Prescott's suit alleged that the pictures and new items, when taken in context, held him out to the public in the false light of a drunkard. Though Prescott's complaint is not crystal clear, counsel for Prescott at oral argument went to the crux of the suit when he indicated that the paper presented this false impression of Prescott by publicizing the Waveland arrest. The complaint alleged this action by the paper caused Prescott to lose his job and suffer actual damages in the amount of $750,000. Prescott also sought punitive damages in the amount of $750,000.
In deciding the paper's motion for summary judgment the trial court had before it Prescott's deposition, the deposition of Ellis Cuevas, the paper's editor and publisher, an affidavit from Cuevas with accompanying exhibits and a battery of motions by Prescott. One of these motions sought to strike Cuevas' affidavit for non-compliance with M.R.C.P. 56(e). Because we hold the summary judgment was proper without reference to Cuevas' affidavit, the trial court's failure to address this motion need not detain us.
Prescott stated that he had left work between 5 and 6 p.m. on the night of the accident. He recalled drinking a total of about ten beers at two different locations between leaving work and being involved in the accident. Prescott testified that the accident occurred about 10:30 p.m. He testified that he hit the utility pole because his Blazer automobile had broken shock absorbers which caused him to momentarily lose control when he struck a bump.
In his deposition, Prescott acknowledged he received a ticket for the October 19, 1982 accident charging him with driving *79 under the influence, reckless driving and leaving the scene of an accident. Later, Prescott was found not guilty of the aformentioned charges but he was found guilty of causing property damage. He was fined $100 and paid restitution of about $625 to the power company.
Prescott admitted he was charged October 5, 1982 with driving under the influence and with improper lane usage in Waveland. He pled no contest to the lane usage violation and pled guilty to the DUI charge and was fined $247.
Cuevas stated in his deposition that the paper printed an "update" item about the disposition of the charges against Prescott. A copy of that article appears in the record. The article notes Prescott was found not guilty of driving under the influence, leaving the scene of the accident and reckless driving. It notes that Prescott was guilty of property damage and that he paid restitution. It makes no mention of the Waveland charges. Cuevas said those charges were omitted after he received a letter from counsel for Prescott and discussed it with his attorney.

LAW
As noted, the crux of Prescott's complaint is invasion of privacy by being placed in a false light before the public. The newspaper initially argues that we have not specifically recognized that branch of invasion of privacy called "false light." The paper goes on to urge this Court either to refuse to recognize this theory of recovery, or, at least choose some other case to express its approval.
Both parties acknowledge this Court's opinion in Deaton v. Delta Democrat Publishing Co., 326 So.2d 471 (Miss. 1976), wherein we stated:
Mississippi has by implication judicially recognized the common law right to privacy. Martin v. Dorton, 210 Miss. 668, 50 So.2d 391 (1951). Although the law of privacy has developed along divergent lines and amid a welter of confusing judicial pronouncements, four distinct theories of the cause of action have been generally recognized: (1) The intentional intrusion upon the solitude or seclusion of another; (2) the appropriation of another's identity for an unpermitted use; (3) the public disclosure of private facts; and (4) holding another in the public eye in a false light. W. Prosser, Handbook of the Law on Torts § 117 at 804-14 (4th ed. 1971); Restatement of Torts, 2d § 652A (Tentative Draft No. 21, 1975).
Though the opinion is not explicit, Deaton appeared to have dealt with invasion of privacy by publication of private facts. Since Deaton we have explicitly or implicitly recognized the theories of intentional intrusion upon the solitude or seclusion of another and appropriation of another's identity or "commercial appropriation." Candebat v. Flanagan, 487 So.2d 207 (Miss. 1986). Apart from acknowledging false light as one recognized theory of recovery, however, we have not confronted the question of whether we will recognize this theory. Section 652E of the Restatement (Second) of Torts (1976) delineates the requisites for recovery under the theory of false light. It states:
Publicity Placing Person in False Light
One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
Comment "a" makes clear that "it is essential to the rule stated in this section that the matter published concerning the plaintiff is not true." But, comment "b" expresses the institute's position that the falsity need not be defamatory. It states:
The interest protected by this Section is the interest of the individual in not being made to appear before the public in an *80 objectionable false light or false position, or in other words, otherwise than as he is.
* * * * * *
It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed. It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position.
The newspaper notes other courts have declined to recognize false light as a separate theory of recovery. See e.g. Sullivan v. Pulitzer, 709 S.W.2d 475 (Mo. 1986); Renwick v. News and Observer Publishing Co., 310 N.C. 312, 312 S.E.2d 405 (1984). There may be little or no reason to recognize false light claims where, as here, the false light alleged is defamatory in nature. See Sullivan, supra; Rinsley v. Brandt, 700 F.2d 1304, 1307 (10th Cir.1983). However, Prosser and Keeton note that the real benefit of false light actions is in providing redress where the publication is false yet does not amount to defamation. Prosser & Keeton On The Law of Torts 866 (W. Page Keeton 5th ed. 1984).
It is not important for us to delineate our position regarding recognition of false light here because we are confident that in any event Prescott has failed to present a case as a matter of law.
In Rinsley, the Tenth Circuit Court of Appeals noted that false light actions differ from defamation actions because recovery is for mental distress rather than injury to reputation.
In most aspects, however, the two actions are similar. For example, essential to both a false light privacy claim and a defamation claim is a determination that "the matter published concerning the plaintiff is not true." Restatement (Second) of Torts § 652E comment a, at 395. Thus, in a false light privacy action, as in a defamation action, truth is an absolute defense.
700 F.2d at 1307. We recently took the same position in a defamation context. Fulton v. Mississippi Publishers Corp., 498 So.2d 1215 (Miss. 1986). In Fulton we stated:
The threshold question is whether the statement made was defamatory. See Ferguson v. Watkins, 448 So.2d 271, 275 (Miss. 1984); Gulf Publishing Co., Inc. v. Lee, 434 So.2d 687, 694 (Miss. 1983), for if the statement was not defamatory, little else matters. In the procedural life of a defamation suit, the court determines whether the statement bears the meaning ascribed to it by the plaintiff and whether this meaning is defamatory. Manasco v. Walley, 216 Miss. 614, 630, 63 So.2d 91, 96 (1953); Brewer v. Memphis Publishing Co., Inc., 626 F.2d 1238, 1245 (5th Cir.1980); Restatement (Second), Torts § 614 (1977). If the court decides against the plaintiff on either of these questions, the case is ended. Restatement (Second), Torts § 614 (1977).
498 So.2d at 1216.
We might substitute the word "false" for the word "defamatory" in the preceding passage to resolve this appeal. Like defamation, truth is a defense to false light. Miss. Const. art. III, § 13 (1890), and if the statement is not false, little else matters.
We are aware that truthful statements may yet leave a false impression. The context itself may create a false impression. See Brown v. Flynt, 726 F.2d 245 (5th Cir.1984) (accurate photograph of entertainer's act with a "diving pig" published without consent in men's magazine on the same page with overtly sexual material). A false impression may be created by the omission of pertinent facts. See Memphis Publishing Co. v. Nichols, 569 S.W.2d 412 (Tenn. 1978) (inference that shooting victim was engaged in adulterous affair because the story omitted the fact that the shooting occurred during a social gathering).
However, to again borrow from our decision in Fulton, we think that

*81 The words used must have been clearly directed at the plaintiff (and) the [false light] must be clear and unmistakeable from the words themselves and not the product of innuendo, speculation or conjecture.
498 So.2d at 1217. (citing Ferguson v. Watkins, 448 So.2d 271, 275 (Miss. 1984). To state it another way, though false light may occur from the context, this "does not relieve a plaintiff from identifying particular statements or passages that are false and invade his privacy." Rinsley v. Brandt 700 F.2d at 1310. It is clear Prescott can not meet this burden and therefore his suit fails.
Prescott admits he was arrested and charged in connection with the traffic accident as the story states. He admits he pled guilty to the driving under the influence charge leveled against him in Waveland  the very offense the reporting of which he contends placed him in a false light. He does not seriously question the accuracy of the pictures, though no doubt he considers the publicity excessive. Prescott can only rely on innuendo, speculation or conjecture to make out his case and this is not enough.
Far from being placed in a "false light," Prescott was portrayed in the "true light," unfortunately for him, of being a man arrested for two drunk driving violations within a short period of time. The fact that either one or both of these alleged violations would not have been published had not Prescott been involved with a newsworthy accident does not make their publication false.
There being no genuine issue of fact concerning the falsity of the publication, the circuit court correctly held that the newspaper was entitled to judgment as a matter of law. The judgment is hereby affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
GRIFFIN, J., not participating.