**Ronald A. WATKINS, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

**Civ. A. No. J90–0620(W).**

United States District Court, S.D. Mississippi, Jackson Division.

June 10, 1992.

Paul Koerber, Abe Rotwein, Jackson, Miss., for plaintiff.

Kenneth Milam, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of the defendant, United Parcel Service, Inc. [hereinafter UPS], for summary judgment pursuant to Rule 56(c)[1] of the Federal Rules of Civil Procedure. Having studied the motion, briefs of the parties, the complaint, affidavits, depositions, and other documents filed, and having heard oral arguments in the matter, this court is persuaded to grant summary judgment for the defendant UPS.

## I. INTRODUCTION

This legal action arose out of the defendant's firing of the plaintiff, Ronald Watkins, an employee of UPS, for violating the defendant's "anti-fraternization" policy. The policy, contained in the defendant's "Impartial Employment and Promotion Guide" states:

> Fraternization is discouraged throughout our organization. Fraternization which includes a supervisory or management employee may be perceived as favoritism or sexual harassment. Fraternization between a supervisor or manager and an employee is not permissable [sic]. Fraternization is clearly not in the best interest of the company, the manager, or the employee.

"Impartial Employment and Promotion Guide," page 11. The Guide further provides on the final page:

> Fraternization is discouraged throughout our organization. Fraternization between a supervisor or manager and an employee who is directly or indirectly supervised is not permissable [sic].

On or about April 15, 1971, plaintiff Ronald Watkins began his employment with UPS as a package car driver. (*See* Plaintiff's Amended Complaint). After working several years with UPS, plaintiff was promoted to a managerial position. (*See* Plaintiff's Amended Complaint). On or about the year 1988, plaintiff, then a division manager with UPS, began a relationship with a female employee, Helen Gable, a UPS truck driver assigned to the company's Meridian, Mississippi, facility. (*See* Plaintiff's Amended Complaint and Plaintiff's Deposition at page 27). When the relationship began between plaintiff Watkins and Gable, the plaintiff was the south division manager of UPS, a territory which encompasses Meridian, Mississippi. (*See* Plaintiff's Deposition at pages 13 and 27). At the time of the inception of the relation-

---

**1.** Rule 56(c) provides in pertinent part:

The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

ship, plaintiff was aware of the defendant's anti-fraternization policy. (*See* Plaintiff's Deposition at page 26). On or about June, 1988, certain managers at UPS discovered plaintiff's relationship with Gable. (*See* Defendant's Response to Plaintiff's Interrogatory No. 12). UPS District Manager Kenny Bolton confronted plaintiff about the relationship, and plaintiff admitted that he and Gable were in fact seeing one another. (*Id.*) On or about August 15, 1988, plaintiff, District Manager Bolton, and District Personnel Manager Rick Warlick met to review UPS's policies concerning fraternization and sexual harassment. (*See* Plaintiff's Deposition at pages 32–35). As a result of the meeting, Bolton informed the plaintiff that he could either resign or be terminated for conduct unbecoming a management employee. (*See* Defendant's Response to Plaintiff's Interrogatory No. 12). Plaintiff refused to resign. Thereafter, UPS fired the plaintiff for violating the company's anti-fraternization policy. (*See* Defendant's Response to Plaintiff's Interrogatory No. 5 and Plaintiff's Deposition at page 33).

## II. PLAINTIFF'S COMPLAINT

The plaintiff filed this present action against UPS for compensatory and punitive damages, asserting a wrongful termination of employment. Jurisdiction before this court is predicated upon 28 U.S.C. § 1331[2] and 28 U.S.C. § 1332.[3] Watkins seeks to recover against UPS on several legal theories including: (1) breach of an employment contract; (2) tortious invasion of privacy; (3) intentional infliction of mental and emotional distress; (4) intentional interference with benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140; (5) breach of fiduciary duties; and (6) violation of public policy.

Seeking to sidestep Mississippi's "termination-at-will" employment policy,[4] plaintiff argues that UPS provided managerial employees such as himself with a "policy book" and that this manual created a binding and enforceable contract of employment which was breached. Watkins asserts that the defendant breached this written contract of employment by firing him under the company's anti-fraternization policy, when this policy is not specifically proscribed by the policy book. The anti-fraternization policy is found in a separate corporate document known as the "Impartial Employment and Promotion Guide." Alternatively, plaintiff argues that even if the policy handbook does not create an employment contract, and even if Mississippi's "at-will" termination rule then be in effect, plaintiff should prevail here because UPS violated public policy which should forbid employers from terminating employees simply because they engage in private, consensual and personal inter-office relationships. Seeking juridical support for this proposition, plaintiff rests part of his public policy argument on the Fifth Amendment to the United States Constitution.[5]

---

**2.** Title 28 U.S.C. § 1331 provides:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**3.** Title 28 U.S.C. § 1332 states:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000.00 exclusive of interest and costs, and is between—
> (1) citizens of different states; ...

**4.** This policy provides that an employee hired for an indefinite term may be discharged at the will of his employer whether for good reason, bad reason, or no reason at all. *Samples v. Hall of Mississippi, Inc.,* 673 F.Supp. 1413, 1416 (N.D.Miss.1987); *Harrison County School Board v. Morreale,* 538 So.2d 1196, 1200 (Miss.1989); *Perry v. Sears, Roebuck & Co.,* 508 So.2d 1086, 1088 (Miss.1987).

**5.** The Fifth Amendment to the United States Constitution provides as follows:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

According to plaintiff, the Fifth Amendment here applies and protects his employment since all persons are entitled to the "most fundamental of human rights—sexual relationships, and marital relationships." (*See* Plaintiff's Response to Defendant's Motion for Summary Judgment).

The plaintiff further contends that UPS's intentional decision to terminate him based on his private relationship with another employee constituted a tortious invasion of privacy and intentional infliction of mental and emotional distress.

As to the ERISA claim, plaintiff states that the defendant "unlawfully discharged the plaintiff for the purpose of interfering with the attainment of rights to further stock option purchases to which the plaintiff would become entitled under the terms and provisions ..." of an employee stock option plan. Plaintiff asserts that such action by UPS violated 29 U.S.C. § 1140.[6] (*See* Plaintiff's Complaint).

Finally, the plaintiff asserts that since the policy book referred to managerial employees and the defendant company as "partners," a fiduciary relationship existed and UPS owed plaintiff certain fiduciary duties. According to Watkins, this fiduciary relationship also existed as a consequence of plaintiff's participation in and ownership of an employee stock option plan.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. *Defendant's Arguments*

Defendant UPS filed a motion for summary judgment contending that there are no genuine issues of material fact, and, therefore, that the company is entitled to judgment as a matter of law. Defendant first asserts that the company's policy book does not create a binding and enforceable employment contract with Watkins, since, says defendant, company policy books or manuals, standing alone, do not create an employment contract, citing *Sloan v. Taylor Machinery Co.*, 501 So.2d 409, 410–11 (Miss.1987) (employer handbook provided four months after commencement of employment did not transfer oral employment agreement into written contract). Defendant contends that plaintiff Watkins has pointed to no written or oral agreement, express or implied, enforceable against UPS, which would preclude the defendant from firing plaintiff for violating the anti-fraternization policy. Further, UPS notes that Mississippi follows the at-will rule of employment, which means that an employer may terminate an employee hired for an indefinite term for any reason, good or bad, or no reason at all. *See Samples v. Hall of Mississippi, Inc.*, 673 F.Supp. 1413, 1416 (N.D.Miss.1987) (Mississippi follows "at-will" termination rule); *Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874, 874–75 (Miss.1981) (same).

UPS further argues that the plaintiff may not recover on a public policy exception to the Mississippi "at-will" rule, since Mississippi recognizes no such exception. *See Russell v. Schering–Plough Corp.*, 725 F.Supp. 901, 902 (S.D.Miss.1989) (declined to adopt public policy exception to Mississippi's "at-will" rule). Nor may plaintiff seek assistance from the Fifth Amendment to the United States Constitution as to the public policy argument, says the defendant, since UPS is a private employer and the plaintiff has shown no state action. *See, e.g., United States v. Price*, 383 U.S. 787, 799, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966) (Fourteenth Amendment protects individuals against state action not private wrongs).

The defendant also attacks the plaintiff's breach of fiduciary duty claim. UPS contends that Mississippi does not recognize a fiduciary relationship flowing from a mere employment contract, citing *Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202 (5th Cir. 1986). In *Guthrie*, the Fifth Circuit Court of Appeals, applying Mississippi state precedent, noted the absence of any Missis-

---

**6.** Title 29 U.S.C. § 1140 provides:

It shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan

....

sippi case law which found the existence of "fiduciary duties in an employment relationship." The Court further stated, "On the contrary, Mississippi follows the rule of employment at will." *Guthrie*, 803 F.2d at 211.

UPS assaults the plaintiff's ERISA claim on two grounds. Firstly, the defendant asserts that the plaintiff's employment stock option plan is a non-qualified plan and not covered by ERISA, 29 U.S.C. § 1001, *et seq.* Secondly, UPS claims that even if the plan is governed by ERISA plaintiff has put forth no factual proof that the defendant's actions were for the purpose of terminating any rights to ERISA benefits. Defendant cites in support the case of *Simmons v. Willcox*, 911 F.2d 1077, 1082 (5th Cir.1990) (plaintiff must establish that employer discharged employee with specific intent to interfere with ERISA benefits).

Plaintiff's invasion of privacy claim fails, says UPS, because of a one year statute of limitations bar, *Young v. Jackson*, 572 So.2d 378, 382 (Miss.1990) (holds that there is a one year limitations period for invasion of privacy), and because the plaintiff cannot establish even a prima facie case that the defendant's conduct amounted to the pattern of harassment necessary to constitute the claim. *See Burris v. South Central Bell Telephone Co.*, 540 F.Supp. 905, 909–10 (S.D.Miss.1982) (plaintiff must show pattern of harassment or communication of such nature as to possess vicious quality in order to recover for invasion of privacy).

Regarding the emotional distress count, the defendant similarly contends that the plaintiff has failed to put forth factual proof on all of the essential elements of this cause of action, which are: (a) a wanton or shamefully gross wrong, or (b) outrageous conduct, and (c) an act done maliciously, intentionally, or with such gross negligence or recklessness as to show indifference to the consequences. *Horton v. Hartford Life Insurance Co.*, 570 F.Supp. 1120, 1124 (S.D.Miss.1983). *See Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss.1981) (defendant's malicious or intentional conduct must evoke outrage or

revulsion or, if unintentional, outrage or revulsion must be reasonably foreseeable). Further, even if a fact issue exists on the issue of liability, plaintiff has shown no damages, says the defendant. *See Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss.1981) (courts may award damages for any mental and emotional distress resulting from intentional act which evokes outrage or revulsion).

## B. *Plaintiff's Response*

Plaintiff contends that the defendant's policy book creates an employment contract which proscribes certain employee conduct and governs the relationship between the company and managerial employees. According to plaintiff, the policy book explicitly sets forth conduct which might cause an employee's termination, such as gambling or stealing. Plaintiff then reasons that the policy book thus created a legitimate expectation that a managerial employee would continue to be employed with the company as long as he or she did not violate any proscribed conduct enumerated in the policy book. Plaintiff concludes that Mississippi's jurisprudence establishes that a policy or handbook may provide express terms of an employment contract, citing *Holland v. Kennedy*, 548 So.2d 982, 985–86 (Miss.1989), which reaffirmed the holding that an express contract of employment may be modified by an employer's policy manual if the contract states that it will be performed in accordance with the rules and regulations of the employer. UPS's decision to fire Watkins because of a sexual relationship with Gable, conduct not specifically prohibited by the policy book, breached the employment contract, says the plaintiff. Further, argues plaintiff, even if UPS' "anti-fraternization" policy found only in the Impartial Employment and Promotion Guide be deemed part of the policy book, nowhere is it stated that an employee could be terminated for violating its mandates.

Attempting to bolster his claim that the policy book was a contract of employment, Watkins next asserts that "new and independent consideration passed between the

parties" when he became a managerial employee, and, at that point that any at-will employment relationship ended. Specifically, the plaintiff claims he was a lower level employee prior to his ascension to a managerial position. The plaintiff claims that at the time he received a promotion to a managerial level, he withdrew his membership from a union, gave up the protection of a collective bargaining agreement, invested $31,000.00 in UPS stock, and turned down lucrative job offers in return for UPS's promise to provide continued employment and adhere to the terms of the policy book. Plaintiff's authority for this proposition is *Windfield v. Groen Division, Dover Corp.*, 740 F.Supp. 1230, 1233 (S.D.Miss.1990) (employment relationship which begins at will does not necessarily continue as such if employment agreement has additional consideration).

Plaintiff further argues that he may recover on the theory of tortious invasion of privacy. Firstly, he contends that the United States Supreme Court has long recognized "sexual" concerns as being fundamental rights entitled to privacy protection. *See Eisenstadt v. Baird*, 405 U.S. 438, 452–56, 92 S.Ct. 1029, 1038–39, 31 L.Ed.2d 349 (1972) (right of individual to be free from unwarranted governmental intrusion into matters fundamental, such as decision whether to bear child). Secondly, plaintiff suggests that this court should take guidance from the case of *Slohoda v. United Parcel Service, Inc.*, 193 N.J.Super. 586, 475 A.2d 618 (1984), *cert. denied*, 104 N.J. 400, 517 A.2d 403 (1986), wherein UPS was sued by a former married employee for intruding into his private and sexual activity with a woman other than his wife. Finally, plaintiff contends that he has raised genuine issues of material fact on the privacy claim since he has shown that he had a reasonable expectation of privacy in his personal relationship with Ms. Gable. Watkins contends that he has put forth factual proof on all essential elements of the intentional tort claim, and, therefore, the defendant's motion for summary judgment

should be denied. *See Young v. Jackson*, 572 So.2d 378, 382 (Miss.1990) (discussion of invasion of privacy claim).

Regarding the public policy claim, plaintiff maintains that recent decisions of the Mississippi Supreme Court indicate an erosion of Mississippi's past refusal to recognize a public policy exception to the "at-will" rule. *See Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1089–90 (Miss.1987) (court considered jurisprudence concerning public policy exception but declined to overrule position of recognizing no exception); *Shaw v. Burchfield*, 481 So.2d 247, 253–54 (Miss.1985) (noted attack upon "at-will" termination rule by other jurisdictions). Plaintiff encourages this court to adopt a public policy exception from alleged privacy principles rooted in the United States Constitution and to hold that an employer may not interfere with the employee's "fundamental right" to a sexual relationship. Plaintiff also relies upon *Whiting v. Jackson State University*, 616 F.2d 116, 122 (5th Cir.1980), for the proposition that no person can be discharged from a job on constitutionally impermissible grounds.

The plaintiff supports his ERISA claim by arguing that his employee stock option plan is a qualified plan as defined pursuant to ERISA, 29 U.S.C. § 1001, *et seq.* He suggests that UPS has made no more than a naked assertion that the subject employee stock option plan is not governed by ERISA. *See Eaves v. Penn*, 587 F.2d 453, 458–59 (10th Cir.1978) (Court noted fiduciary obligations of officer and trustee of employee stock option plan pursuant to ERISA).

Finally, the plaintiff contends that the policy book creates a "partnership agreement" between managerial employees and UPS and that his termination of employment by UPS constituted a breach of a fiduciary duty. Plaintiff further asserts that the payment of dividends by the company to him is prima facie evidence of his "partnership" status. Plaintiff's lead authority on this argument is Miss.Code Ann.

§ 79–12–13(4) [7] (1972) (receipt by person of share of profits of business is prima facie evidence that he is partner in business with certain exceptions).

## IV. COURT'S RULING

### A. The Standard

Defendant UPS moves for summary judgment pursuant to Rules 56(b) [8] and 56(c) of the Federal Rules of Civil Procedure. A party seeking summary judgment always bears "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To satisfy this burden, UPS as movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir.1992). This initial burden remains with UPS as the moving party even though the issues involved are ones on which Watkins, the non-movant, will bear the burden of proof at trial. *Russ v. International Paper Co.*, 943 F.2d 589, 592 (5th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). Once the moving party has met its burden pursuant to Rule 56(c), the non-moving party is required to respond with proof of a prima facie case sufficient for a "fair-minded jury" to enter a verdict in his favor. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992); *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1122–23 (5th Cir.1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Watkins can meet his burden by tendering affidavits, depositions, and other materials which provide significant probative evidence demonstrating the existence of a triable issue of fact. *Resolution Trust Corp. v. Murray*, 935 F.2d 89, 92 (5th Cir.1991). The role of the judge is not to weigh the evidence and determine the truth of the allegations in question, but rather to determine whether there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). If the party opposing the summary judgment motion fails to meet his burden, the court may enter summary judgment for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, the court must be mindful that in reviewing a summary judgment motion, all inferences should be drawn in the light most favorable to Watkins, the non-moving party. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir.1991).

### B. Policy Book as Contract?

█ Plaintiff first alleges that UPS's policy book created a written contract of

---

7. Miss.Code Ann. § 79–12–13(4) provides:

 In determining whether a partnership exists, these rules apply:

 \* \* \* \* \* \*

 (4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment....

8. Rule 56(b) of the Federal Rules of Civil Procedure states:

 A party against whom a claim, counter-claim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

employment which governed plaintiff's conduct and bound UPS to its terms. Plaintiff's employment should continue, says Watkins, as long as he offends no proscribed conduct enumerated in the policy book.

Mississippi adheres to the common law rule that an employee hired for an indefinite term may be discharged at the will of his employer. *Harrison County School Board v. Morreale*, 538 So.2d 1196, 1200 (Miss.1989). The employer may terminate the employment contract at will, whether for good reason, bad reason, or no reason. *Samples v. Hall of Mississippi, Inc.*, 673 F.Supp. 1413, 1416 (N.D.Miss.1987). A written employment contract can be modified by a policy book or manual if the written contract expressly provides that it will be performed according to the policies, rules, and regulations of the employer. *Holland v. Kennedy*, 548 So.2d 982, 985 (Miss.1989); *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss.1987); *Robinson v. Board of Trustees of East Central Junior College*, 477 So.2d 1352, 1353 (Miss.1985). No Mississippi court has held that a policy book or manual, standing alone, suffices as an express or implied written contract of employment. *See Sloan v. Taylor Machinery Co.*, 501 So.2d 409, 410–11 (Miss.1987) (employer's presentation of employee handbook four months after commencement of oral employment relationship did not transform such agreement into written contract).

Still, plaintiff insists that a reading of the policy book by this court will reveal the obligatory nature of the manual. Further, the plaintiff stated in his deposition that he felt the policy book was a contract of employment because the managerial employees of UPS referred to the book at employment meetings. (*See* Plaintiff's Deposition at page 25).

This court is persuaded that the policy book in the present case does not create an express or implied written contract of employment. The policy book is grouped into five categories: "Our Company and Organization;" "Our People;" "Our Service;" "Our Character and Reputation;" and "Our Economic Stability." The policies listed within the manual are couched in terms of ideals and goals. Examples of these ideals are the following: "we set long term company-wide objectives;" "we maintain a spirit of team work;" "we expect our managers to accept responsibility for decisions;" "we limit strictly the hiring of relatives;" "we pay our people fairly;" "we must do what we promise;" "we try to maintain the good will of former employees;" and "we seek to expand our business." The policy manual does not contain specific directives for employees regarding promotion, termination, sick leave, benefits, and raises. Rather, the manual is thematic and aspirational in nature. Upon a close reading of this manual, no one should conclude that its encouraging and inspirational themes constitute the bases for a contract. *See Maietta v. United Parcel Service, Inc.*, 749 F.Supp. 1344, 1361–63 (D.N.J.1990), *aff'd*, 932 F.2d 960 (3rd Cir.1991) (policy book of UPS did not constitute employment contract since no one could reasonably have thought it was intended to create legally binding obligations).

█ Plaintiff then attempts to show that new consideration formed an integral part of his managerial promotion and employment contract; however, he has failed to show requisite factual proof of any bargained-for consideration beyond services incident to his employment. *Conley v. Board of Trustees of Grenada County Hospital*, 707 F.2d 175, *reh. denied*, 716 F.2d 901 (5th Cir.1983). *See Samples v. Hall of Mississippi, Inc.*, 673 F.Supp. 1413, 1419 (N.D.Miss.1987) (neither continuing faithful service nor service during union campaign constitutes adequate consideration for promise of permanent employment). Specifically, plaintiff has shown no proof that he agreed with UPS to an employment contract, to suffer some detriment, i.e., giving up membership in union, withdrawal from collective bargaining agreement, in return for UPS's promise to continue his employment and adhere to any terms and conditions in the policy book. *See Windfield v. Groen Division, Dover Corp.*, 740 F.Supp. 1230, 1233–34 (S.D.Miss.1990) (employment agreement

must have consideration by both parties to be binding).

■ Further, plaintiff's participation in the stock option plan does not indicate adequate consideration for an employment contract. Participation of UPS employees in the plan was discretionary, and the plan was based, at least in part, on performance. The court likewise finds without merit plaintiff's argument that adequate consideration for an employment contract is shown by his refusal to take other "lucrative" job offers. *See Windfield*, 740 F.Supp. at 1235 (no consideration where employer had no reason to know of abandonment of job search). To the contrary, the plaintiff was merely promoted to a managerial position, and at such point, he fell outside the scope of the union's collective bargaining agreement and entered into an at-will relationship with the defendant. Once a manager, Watkins and others similarly situated were provided with instructive and educational manuals, such as the policy book, which address the company's ideals and goals.

### C. Public Policy Exception To "At–Will" Exception

■ Since plaintiff had no written contract founded on the policy handbook, the court is of the opinion that plaintiff's employment was an "at-will" one. Anticipating this possible finding, plaintiff then attacks this conclusion on grounds of public policy, contending that defendant's anti-fraternization rule is an affront to principles of equity and decency. Most of plaintiff's argument springs from his contention that principles inherent in the Fifth Amendment to the United States Constitution apply here. However, this reliance is misplaced. Plaintiff has not shown that he was deprived of a constitutional right due to federal or state action. *See, e.g., United States v. Price*, 383 U.S. 787, 799, 86 S.Ct. 1152, 1160, 16 L.Ed.2d 267 (1966) (Fourteenth Amendment protects individuals against state action, not private wrongs);

*Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987) (Fifth Amendment protects against federal governmental action); *Klein Independent School District v. Mattox*, 830 F.2d 576, 577 (5th Cir.1987), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1473, 99 L.Ed.2d 702 (1988) (constitutional protection accorded to right of freedom from state intrusion into personal relationships or activities). Nor has plaintiff cited to this court any authority holding that a private employer is subject to the dictates of the Fifth Amendment. Nevertheless, plaintiff asks this court to perceive privacy interests protected by the Fifth Amendment and then to apply same here as the foundation for an exception to Mississippi's at-will termination rule.

■ This court, however, declines to adopt a public policy exception to the Mississippi "at-will" rule. The Mississippi Supreme Court has not deviated from its position of refusing to recognize a public policy exception to the "at-will" termination rule. *See Russell v. Schering–Plough Corp.*, 725 F.Supp. 901 (S.D.Miss.1989) (Mississippi Supreme Court has not abandoned across-the-board rule of no public policy exception to "at-will" rule); *Perry v. Sears, Roebuck & Co.*, 508 S.2d 1086, 1089–90 (Miss.1987) (declined to carve out public policy exception in light of Mississippi's minority position of recognizing no such exception).

In the case of *Laws v. Aetna Finance Co.*, 667 F.Supp. 342, 348–49 (N.D.Miss. 1987), the United States District Court, making an *Erie* [9] guess, predicted that Mississippi would recognize a public policy exception where an employee is discharged for refusing to commit an illegal act on behalf of his employer. *Laws*, 667 F.Supp. at 346. To date, no decision from the Mississippi Supreme Court has acknowledged even this exception predicted by the United States District Court. Regardless, the

---

**9.** The United States Supreme Court case of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), counsels a district court sitting in diversity where state law is applied in a lawsuit "to guess" what the state supreme court would do under the state's law in circumstances where state law on a relevant issue is unclear or unaddressed.

facts in *Laws* which prompted the court to predict an exception are hardly present here. In *Laws*, the plaintiff contended that he was discharged by his employer because he would not "pack" insurance policies with loans that he made on behalf of his employer to borrowers. *Laws*, 667 F.Supp. at 343. Packing, a course of conduct argued as violative of federal and state law, is a practice of adding insurance coverage to loans and collecting insurance premiums without informing the borrower that the loans included insurance coverage, nor offering the borrower an opportunity to decline such coverage. *Id.* Contrariwise, the "anti-fraternization" policy at issue here has not been outlawed by any state or federal enactment. So, discerning no similarity between the facts of the lawsuit *sub judice* and those of *Laws*, and discerning no cracks in Mississippi's at-will termination rule as argued by plaintiff, this court declines under *Erie* to carve out another limited public policy exception to Mississippi's hoary "at-will" termination rule.

Finally, even if the court found a public policy exception here, plaintiff's claim that defendant breached an express or implied oral contract of employment has problems under the applicable statute of limitations. The claim is barred by Mississippi's one year statute of limitations, Miss.Code Ann. § 15–1–29 (Supp.1991).[10] Plaintiff was discharged on August 17, 1988, and did not file his complaint until December 18, 1990, clearly more than one year following his termination.

### D. ERISA Claim

■ The parties strenuously dispute whether the plaintiff's employee stock option plan is a qualified plan pursuant to ERISA. 29 U.S.C. § 1001, *et seq.* Notwithstanding this argument, this court finds that the plaintiff may not recover on

his ERISA claim, since he has not put forth a prima facie case that the defendant fired plaintiff with the specific intent to terminate ERISA benefits.[11] 29 U.S.C. § 1140. *See Simmons v. Willcox*, 911 F.2d 1077, 1082 (5th Cir.1990) (plaintiff must show employer acted with specific intent to terminate ERISA benefits).

### E. Invasion of Privacy Claim

■ In the case of *Deaton v. Delta Democrat Publishing Co.*, 326 So.2d 471, 473 (Miss.1976) (citing *Martin v. Dorton*, 210 Miss. 668, 50 So.2d 391 (1951)), the Mississippi Supreme Court stated that Mississippi "has by implication judicially recognized the common law right to privacy." Four distinct causes of action have been generally recognized in the privacy arena: (1) the intentional intrusion upon the solitude or seclusion of another; (2) the appropriation of another's identity for an unpermitted use; (3) the public disclosure of private facts; and (4) holding another in the public eye in a false light. *Deaton*, 326 So.2d at 473 (citing W. Prosser, *Handbook of the Law on Torts* § 117 at 804–14 (4th ed. 1971)). Plaintiff Watkins alleges that UPS intentionally intruded upon his solitude and seclusion.

The Mississippi Supreme Court has stated that to recover for an invasion of privacy, a plaintiff must show a substantial interference with his seclusion of a kind that "would be highly offensive to the ordinary, reasonable man, as a result of conduct to which the reasonable man would strongly object." *Candebat v. Flanagan*, 487 So.2d 207, 209 (Miss.1986) (citing *Restatement 2d of Torts*, Section 652(b), Comment D (1977)). Further, the plaintiff must show some bad faith or utterly reckless prying to recover on an invasion of privacy cause of action. *Candebat*, 487 So.2d at 209 (citing *Wilson v. Retail Credit Co.*, 325 F.Supp.

---

**10.** Miss.Code Ann. § 15–1–29 provides:
 ... [E]xcept that an action based on an unwritten contract of employment shall be commenced within one (1) year next after the cause of such action accrued, and not after.

**11.** In the plaintiff's response to defendant's motion for summary judgment, Watkins merely argues to this court that since the defendant

only raised the issue of ERISA applicability, plaintiff is not required to put forth any evidentiary proof regarding whether UPS acted with an intent to interfere with a right to ERISA benefits. 29 U.S.C. § 1140. (*See* Plaintiff's Response to Defendant's Motion for Summary Judgment).

460, 467 (S.D.Miss.1971), *aff'd,* 457 F.2d 1406 (5th Cir.1972)).

Arguing that UPS' conduct was highly offensive, an element necessary to establish the intentional tort, *Candebat v. Flanagan,* 487 So.2d 207, 209 (Miss.1986), plaintiff claims that his relationship with Gable should not have concerned UPS, that the relationship took place primarily when the individuals were not working, that the discharge prevented a contemplated marriage between plaintiff and Gable, and that UPS arbitrarily enforced its policy since the company had not fired other employees engaged in consensual sexual relationships. Plaintiff concludes that these circumstances entitle him to a trial on the merits.

The court disagrees. Nowhere in his papers has plaintiff shown bad faith or utterly reckless prying on the part of UPS. *Wilson v. Retail Credit Co.,* 325 F.Supp. 460, 467 (S.D.Miss.1971), *aff'd,* 457 F.2d 1406 (5th Cir.1972). Plaintiff does not allege, for example, that defendant snooped in plaintiff's bedroom, or electronically wired for sound plaintiff's work environs. Plaintiff's factual submission hardly parallels those found in cases such as *Vernars v. Young,* 539 F.2d 966, 969 (3rd Cir.1976), where the Third Circuit applied Pennsylvania law and found a cause of action existing for the intentional intrusion upon the plaintiff's solitude or seclusion where a defendant was accused of intentionally opening private mail and reading it without authorization, or in *Fowler v. Southern Bell Telephone and Telegraph Company,* 343 F.2d 150, 156 (5th Cir.1965), where the Fifth Circuit applied Georgia law and found a privacy cause of action for unauthorized and surreptitious wire-tapping of a plaintiff's private telephone conversation.[12]

Further, although plaintiff raises an issue of selective enforcement of the policy by UPS, plaintiff has not pleaded such a claim nor shown its viability to this court. *See, e.g., Williams v. Taylor,* 677 F.2d 510, 515–16 (5th Cir.1982) (Equal Protection Clause of Fourteenth Amendment prohibits selective enforcement of state voting laws).

The *Slohoda* case, 193 N.J.Super. 586, 475 A.2d 618 (1984), heralded by the plaintiff is not applicable to the case *sub judice.* In *Slohoda,* the plaintiff, a married employee of UPS, claimed he was wrongfully discharged by the company on the basis of an adulterous act. Plaintiff alleged that the company did not fire unmarried employees for engaging in sexual relationships, and such a marital distinction violated New Jersey state law. Plaintiff further argued that UPS's policy of firing married employees for sexual liaisons with non-spouses violated public policy and the right to privacy. The Court in *Slohoda* held that if an employer's discharge policy is based in significant part on an employee's marital status, such a discharge violates New Jersey law. *Slohoda,* 475 A.2d at 620. The Court made no finding as to the claim by Slohoda that the company's policy of firing him based on an adulterous relationship violated his right to privacy or public policy. *Id.* at 622. Instead, the Court remanded the case to the trial court for consideration of these claims. Notwithstanding the fact that the *Slohoda* decision concerned an employer's discriminatory act based on marital status, the Court expressly declined to rule on any alleged "right of privacy" claim. *Id.*

■ Finally, the applicable statute of limitations concerning a privacy cause of action also poses a bar to recovery by the plaintiff. An action based on an invasion of privacy has a one year statute of limitations. *Young v. Jackson,* 572 So.2d 378, 382 (Miss.1990). Plaintiff's privacy claim before this court is time-barred, since more than a year passed from the time the alleged tort occurred and the filing of the complaint. The defendant terminated the plaintiff on August 17, 1988, and the plaintiff filed the present suit on December 18, 1990.

### F. Mental and Emotional Distress Claim

■ Next, the court considers plaintiff's mental and emotional distress claim. In support of this claim, plaintiff but offers

---

**12.** This court has found no reported cases applying Mississippi law where plaintiff has recovered for the right of privacy sub-tort of intentional intrusion upon the solitude or seclusion of another.

in his complaint the assertion that "Defendant UPS tortiously invaded the privacy of the Plaintiff and, in doing so, intentionally inflicted mental and emotional distress upon the Plaintiff.... " (*See* Plaintiff's Complaint). The court notes that plaintiff failed to argue the legal theory of infliction of emotional distress in response to the defendant's motion for summary judgment. The Mississippi Supreme Court case of *Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss.1981), recognized the cause of action for intentional infliction of mental and emotional distress. The Court stated:

> [w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally—or even unintentionally yet the results being reasonably foreseeable—Courts can in certain circumstances comfortably assess damages for mental and emotional stress, even though there has been no physical injury. In such instances, it is the nature of the act itself—as opposed to the seriousness of the consequences—which give impetus to legal redress.

*Sears*, 405 So.2d at 902. Although the terms "outrage" and "revulsion" are not clearly defined in Mississippi case law, the Fifth Circuit Court of Appeals, applying Mississippi law, discussed their meaning in the case of *White v. Walker*, 950 F.2d 972, 978 (5th Cir.1991). The Court in the *White* case stated:

> Liability [for the intentional tort] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*White*, 950 F.2d at 978 (citing *Restatement of Torts 2d* § 46(d)). The plaintiff simply has not established a prima facie case that the defendant's actions were so extreme, outrageous, or revulsive that might warrant the imposition of liability. *White*, 950 F.2d at 978. Rather, the defendant's actions were pursuant to an express employment policy. Notably, as mentioned previously, the plaintiff knew of the policy at the time he began the prohibited conduct, and he was clearly aware that his conduct deemed offensive to the company could result in his departure. Thus, this intentional tort claim has no merit.[13] *See Mitchell v. Random House, Inc.*, 865 F.2d 664, 672 (5th Cir.1989) (defendant's conduct must evoke outrage or revulsion); *Burris v. South Central Bell Telephone Co.*, 540 F.Supp. 905, 909–10 (S.D.Miss.1982) (conduct should be extreme and outrageous); *Horton v. Hartford Life Insurance Co.*, 570 F.Supp. 1120, 1124 (S.D.Miss.1983) (plaintiff must show gross wrong or outrageous conduct done maliciously or intentionally as to show indifference to consequences).

### G. Fiduciary Relationship

 Finally, this court is unpersuaded by plaintiff's argument that he had a fiduciary relationship with UPS due to language in the policy book which referred to employees and the company as "partners." *See Maietta v. United Parcel Service, Inc.*, 749 F.Supp. 1344, 1358 n. 23 & 1362 n. 25 (D.N.J.1990), *aff'd*, 932 F.2d 960 (3rd Cir.

---

**13.** The Fifth Circuit Court of Appeals, applying Mississippi law, noted that no Mississippi state case or law specifically addresses the statute of limitations period applicable to a claim of intentional infliction of mental and emotional distress. *Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202, 210 (5th Cir.1986). The Court in *Guthrie* cited Miss.Code Ann. § 15–1–35 (1972) which applies a one-year limitations period for claims of "assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace.... " *Guthrie*, 803 F.2d at 210. The Court further cited a Mississippi Supreme Court decision, *Southern Land & Resources Co. v. Dobbs*, 467 So.2d 652, 654 (Miss.1985), which holds that § 15–1–35 applies to not only the enumerated torts but those torts "of the *type* enumerated." *Guthrie*, 803 F.2d at 211 (emphasis added).

Reasoning that the claim of intentional infliction of emotional distress is a claim of the type enumerated in § 15–1–35, the *Guthrie* Court affirmed the district court's conclusion that the one-year statute of limitations period applied. *See King v. Otasco, Inc.*, 861 F.2d 438, 442 (5th Cir.1988) (applying Mississippi law, claim for intentional infliction of emotional distress falls within one-year statute of limitations period). Thus, although no party in the case *sub judice* has raised the limitations period issue regarding a claim of intentional infliction of emotional distress, this court finds that plaintiff's claim is time-barred pursuant to Miss.Code Ann. § 15–1–35. The defendant discharged the plaintiff on August 17, 1988, and plaintiff filed the present suit more than two years later on December 18, 1990.

1991) (although employee may be stockholder in company, receive dividends, and is termed a "partner," with company, no contractual relationship established). Nor may plaintiff successfully argue that his purchase of stock and receipt of dividends created a "partnership" status with UPS. The stock option plan was discretionary and based on employee performance. No Mississippi court has created a fiduciary relationship or allowed a claim for breach of a fiduciary duty based on a mere employment contract or relationship between an employer and employee. *Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202, 211 (5th Cir.1986).

## V. CONCLUSION

Having considered defendant's motion for summary judgment and plaintiff's responses under Rule 56, Federal Rules of Civil Procedure, and under the rubric of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the court finds that plaintiff has not carried his burden of establishing a trial issue on any of his claims. Therefore, the court finds that the defendant's motion for summary judgment is well taken and should be granted. A separate judgment shall be entered in accordance with the local rules.

SO ORDERED.